## Case No. 3,732.

### DEDEKAM v. VOSE et al.

[25 Hunt, Mer. Mag. 719.]

District Court, S. D. New York. 1851.[1]

SHIPPING—NEGLIGENT STOWAGE — DEDUCTION OF DAMAGES FROM FREIGHT—TENDER.

[1. Where iron rods are damaged by reason of improper stowage, the same having been placed at the bottom of the vessel and covered by coal, and to which method of stowage the shipper at the time objected, he is entitled to a set-off against the freight charges to the extent of such damage.]

[2. An offer to pay the freight with such set-off, followed by payment into court, is a fulfillment in good faith of the contract of shipment.]

Before JUDSON, District Judge.

This suit is founded upon a bill of lading on a shipment of thirty tons of railroad iron

---

[1] [Affirmed in Case No. 3,729.]

on board the Brodrene, Charles C. Furst, master, lying in the river Tyne, and bound for the port of New York, dated May 15th, 1850. The contract is in the usual form, as "shipped in good order and well-conditioned," with a note at bottom in the following words: "Weight unknown, and not accountable for rust." The method of stowage adopted by the master was to place at the bottom of the vessel twenty-two tons of the iron, upon which a large quantity of Newcastle coal was stowed, and then the remaining eight tons of iron upon the top, without damage in either case. It was clearly shown that the rods were shipped in dry weather, and that the whole were new, bright, and free from rust. That at the arrival of the ship the eight tons were delivered in good order, but the iron stowed under the coal was damaged by an unusual degree of damp, while the coal and coal-dust intermingling with the rods had materially injured them, and at a sale at auction, with notice to the owners of the vessel, a loss was incurred to the amount of $164.14.

The respondent, in the sixth article of the answer, alleges that the damage incurred to the cargo amounted to the above sum of $164.14, and that they had offered and tendered to the libellant the full amount of the freight money, deducting therefrom said damages before suit, to wit, on the 18th of September, 1850, the respondent paid into court the sum of $257.84, being the balance of freight, deducting said damages. That sum is now in court to await its order. The libellant objects to this tender and payment, and claims still to recover $257.84, with cost, on several grounds: (1) That the iron was well and properly stowed; (2) that the rust and damage were produced by showers of rain while the iron was being put on board, and by the natural dampness of the vessel, without fault of the master; (3) that the shippers gave their consent to this mode of stowage, and therefore the vessel was not responsible for the damage; (4) there was no legal tender before suit; and (5) the damaged iron was stowed on the top of the coal, and, by the respondent's own proof, this was good stowage. These several positions were examined, and carefully compared with the evidence. These objections involve only questions of fact, and the weight of the evidence on these several points fails to sustain them. THE COURT on the contrary, finds that the damaged rods were all under the coal, and that the damage was sustained by the improper stowage of the rods at the bottom of the vessel and under the coal. The fact set up by the libellant, that the rods were wet while being put on board, is disproved by the testimony. There is no sufficient proof that the shipper gave consent to the stowage, but, on the contrary, that he protested at the time.

The only remaining point of importance is the question of tender. The offer to pay

the freight with a set-off of actual damages, followed up by the payment of the money into court, is a fulfillment in good faith of the duty of the respondent under this contract. To adopt the positions suggested by the libellant would have a tendency to multiply suits, which is always prejudicial to the great commercial interests of the country. On the other hand, in admiralty proceedings, whenever it is found that an obligor has done all in his power to meet his contract, and render justice to the opposing party without suit, he should not be chargeable with costs. In a case like that the libellant must be deemed a suitor resting on the technicalities of the law, rather than the justice of his cause. From all the circumstances here disclosed, it is considered that the respondent has performed the contract in question, and that the libellant be dismissed with costs to the respondent—the said sum of $257.84 paid into court to remain at the disposal of the libellant.

[NOTE. This decree was affirmed by the circuit court on appeal. Case No. 3,729. The case was afterwards twice heard in that court on questions relating to the taxation of costs. Cases Nos. 3,730 and 3,731.]